STOKER, Judge.
This matter arises out of a suit brought by Mr. Lloyd A. Nicholson, Jr. against Mrs. Patricia M. Grisaffe seeking to have her disqualified as a candidate for Council Member in the Iberia Parish Council, District Eight. Nicholson claims that Grisaffe is disqualified because she is not in fact a resident and domiciliary of the district in which she seeks to be elected.
Suit was filed on July 29, 1983, and after trial of the matter on August 5,1983, judgment was rendered declaring Grisaffe disqualified as a candidate for the council post. This appeal followed. For reasons set out below, we affirm.
FACTS
The subject of dispute in this matter is whether Grisaffe’s place of residence is located within the boundaries of District Eight. Nicholson offered in support of his contention that Grisaffe does not reside in District Eight a survey done by a surveyor employed by him. The survey was done in accordance with the word description of the district found in the reapportionment plan for Iberia Parish.
It is undisputed that Grisaffe is and has been a registered voter in District Eight. However, it is Nicholson’s position that this designation is incorrect and that for purposes of her candidacy, Grisaffe is not in fact a resident of District Eight. Therefore, she is not qualified to run for the council position in that district.
On appeal Grisaffe’s primary argument is that the survey offered into evidence by Nicholson is not “official”. The only “official” evidence in the record is her record of *765 voter registration which places her in District Eight. The registrar of voters testified that he relied on the “official” parish map in registering Grisaffe in District Eight; however, that map is not in evidence. It is Grisaffe’s position that this “official” evidence and the “official” map should prevail over the survey. Other arguments in support of her position are also raised and are addressed below.
DEFENDANT-APPELLANT’S EXCEPTIONS
In defense of plaintiff’s action Mrs. Gri-saffe filed two exceptions in one pleading designated as exceptions of no right and no cause of action. These were filed on the same day on which the trial was held and were referred to the merits with the agreement of the defendant’s counsel. Tr. 27, line 26. No answer to the suit was filed. At the conclusion of the trial the trial court gave oral reasons for its ruling. Both exceptions were overruled, and the trial court disqualified Mrs. Grisaffe as a candidate for the office she sought from District Eight.
EXCEPTION OF NO RIGHT OF ACTION
Defendant Grisaffe grounded her exception of no right of action on the charge that Nicholson’s petition failed to allege that Nicholson is qualified to vote in District Eight as required by law. The evidence at trial established that Nicholson was qualified to vote in District Eight. Under the circumstances the exception of no right of action was properly overruled by the trial court.
EXCEPTION OF NO CAUSE OF ACTION
The position taken in defendant’s exception of no cause of action is her primary defense. She views this case as being governed by a presumption which can not be attacked in this proceeding by evidence. Mrs. Grisaffe does not suggest how one might challenge the accuracy of a map made by the Iberia Parish Police Jury as directed by LSA R.S. 18:532 B and followed by the Registrar of Voters. She does emphatically contend, however, that election district boundaries as fixed on such an “official” map can not be attacked by evidence in the form of an independent survey in an action by one candidate to disqualify another candidate.
In fact, Mrs. Grisaffe takes the position that, even conceding for the sake of argument that an accurate survey would show that she physically resides in District Nine rather than District Eight, such cannot alter her status as a qualified voter and resident in District Eight. In other words Mrs. Grisaffe’s argument is that regardless of the true location of the boundary between Districts Eight and Nine, she is legally qualified as a voter in District Eight and a resident thereof for qualification purposes. Therefore, she meets the qualifications required by the Home Rule Charter of Iberia Parish contained in Article II, Section 2-01, Subparagraphs B and C thereof. Plaintiff’s exhibit 1, Tr. 6.
The duty of a parish governing authority to provide and maintain a map to show election districts is set forth in LSA R.S. 18:532 B. The full text of Section 532 provides:
§ 532. Establishment of precincts
A. Subject to the provisions of R.S. 18:1903, the governing authority of each parish shall establish precincts, prescribe their boundaries and number the precincts consecutively from first to last in each ward. The governing authority of each parish shall define the territorial limits within the ward for which each precinct is established. Each precinct shall be a contiguous, compact area having clearly defined and clearly observable boundaries coinciding with visible features readily distinguishable on the ground such as designated highways, roads, streets, rivers, or canals, except where the precinct boundary is coterminous with the boundary of a parish, an incorporated place, or a ward. No precinct shall be wholly contained within the territorial boundaries of another precinct.
*766 A precinct shall be wholly contained within or without an incorporated place.
B. Each parish governing authority shall provide and maintain at all times a suitable map showing the current geographical boundaries with designation of ward and precinct. A word description of the ward and precinct geographical boundaries shall be attached to each map. Each parish governing authority shall send a copy of each map, with attached description, to the registrar of voters, the secretary of state, and the commissioner of elections. The map may be composed of one or more sheets but each sheet shall not exceed three feet by four feet. The map shall include all existing roads, streets, railroad tracks, and drainage features but shall not include underground utility lines, land use and zoning symbols or shadings, symbols for vegetation cover, topographic contour lines and similar items that obscure the basic street pattern and names. All features, names, titles, and symbols on the map shall be clearly shown and legible. The map sheet of the entire parish shall be on a scale of one inch equals one mile to one inch equals two miles. Map sheets of each incorporated place within the parish shall be on a scale of one inch equals eight hundred feet to one inch equals sixteen hundred feet. Each map sheet shall indicate the date of the base map or the date of last revision. Wherever the boundaries of a precinct, ward, or incorporated place, are coterminous, they shall be clearly indicated.
C. The parish governing authority shall also furnish a copy of the map required in R.S. 18:532(B) clearly indicating the boundaries of each parish governing authority district, school board district, special election district, representative district and senate district.
D. Each parish governing authority shall establish its election precinct boundaries to comply with the provisions of R.S. 18:532(A) and shall submit a map as required by R.S. 18:532(B) on or before January 1, 1984.
Neither plaintiff nor defendant saw fit to introduce the “official” parish map which the registrar of voters testified was furnished to him by the Policy Jury of Iberia Parish and on the basis of which he stated he placed defendant Grisaffe in District Eight. Plaintiff apparently takes the position that what the “official” map shows as the District Eight boundary is immaterial because evidence in the form of a survey shows that defendant Grisaffe does not live in District Eight. As she argues that evidence to challenge the “official” map is inadmissible, defendant apparently takes the position that plaintiff is bound by the action taken by the registrar of voters which the registrar testified places defendant in District Eight.
EXCEPTION OF NO CAUSE OF ACTION PROPERLY OVERRULED
The trial court admitted evidence at the trial on the issue of the location of the boundary of District Eight in relation to the location of defendant’s residence, which is Lot 4A of Blue Haven Subdivision in Iberia Parish. The evidence as to the boundary consisted of the testimony of Alfred W. Schoeffler, a civil engineer and registered land surveyor, together with a plat made by him, P-7 (Tr. 12) and a copy of the Iberia Parish map, P-8 (separate exhibit), on which he marked all the boundaries of District Eight. On both of these exhibits Mr. Schoeffler indicated that Mrs. Grisaffe’s lot (her domicile and residence) is located east of the segment of the district boundary in question and outside of District Eight.
From the trial court’s oral reasons for judgment it is evident that it saw no merit to defendant’s exception of no cause of action. His ruling and judgment effectively overruled the exception. This action was correct.
Defendant presents a persuasive argument concerning the effect of the map which the registrar of voters states was furnished him by the Iberia Parish Police Jury. Nevertheless, we find nothing in law which gives such a map (assuming it was prepared and furnished as directed by LSA *767 R.S. 18:532 B) a presumptively valid or “official” status and effect which can not be questioned in a proceeding such as this. While such a map is official in a sense, its preparation under official authority of the statute by the Parish governing body does not preclude attack on its accuracy when voting or election qualifications come into question. All that the statute provides is that each parish governing authority shall prepare such a map and provide it to certain public officials.
For the reasons given above we hold that evidence as to the boundary of District Eight, other than whatever may be shown on the “official” map made in compliance with Section 532, was admissible.
At this point we note a further reason why we think admission of evidence was proper. As pointed out above the so-called “official” map prepared by the Police Jury was not produced in evidence. The record contains only the testimony of the registrar that such a map was furnished to him. He further testified that based on the districts designated on the map he determined that Mrs. Grisaffe lived in District Eight. The trial court overruled an objection made on behalf of plaintiff to any reference to a map until it had been introduced in evidence. The trial court overruled the objection on the ground that the registrar was entitled to state the reason why he made the determination.
In considering the matter from our viewpoint we note that defendant is actually urging two presumptions: first that the “official” map cannot be challenged in this proceeding, and second, that what the “official” map shows can be proved by the testimony of the registrar alone without production of the “official” map. It appears to us that the objection presented a foundation question and the defendant should not have been enabled to foreclose any inquiry into the accuracy of the registrar’s interpretation of the map through a trial court ruling that exempted the defendant from producing the map relied upon.
EVIDENCE AS TO THE BOUNDARY
The record contains plaintiff’s Exhibit 2 (Tr. 7) which purports to be a word description of District Eight. The parties apparently agree that the word description is accurate and is the valid description of District Eight. After describing a point of beginning and a course along Louisiana Highway 86 to its intersection with Bayou Teche, the description continues to describe the segment of the boundary which is in question here as follows:
“... thence easterly along Bayou Teche to its intersection with a point north of the intersection between LA Highway 344 and Parish Road 429, Thence southerly to its intersection between LA Highway 344 and Parish Road 429, ...”
The word description represented in exhibit P-2 is the only description of any kind in the record of this case. Plaintiff’s expert witness, Mr. Schoeffler, located the line from the point on Bayou Teche which was north of the intersection of the two named roads. He then indicated the line on a plat of survey (P-7) which also shows defendant’s property on which her residence is located. This is Lot 4A, marked by the letter “G”, located 617.49 feet east of the north — south line running through the intersection of Louisiana Highway 344 and Parish Road 429. We annex a copy of the survey represented by P-7 as an appendix to this opinion.
Other than the testimony of the registrar of voters, there is no contradictory evidence as to the location of the north — south line established by Schoeffler. Stated another way, there is no other survey in evidence to show the location of the north — south line. Therefore, the evidence shows that defendant’s property and residence is east of District Eight and she does not live in District Eight. Had the “official” Police Jury map been introduced in evidence, we would be required to resolve any conflict between maps. Since this map is not in evidence, we do not have that problem.
Defendant attacks the validity of the Schoeffler survey on several points. Her principal objection is that Schoeffler estab *768 lished his line as a true north direction rather than magnetic north. While Schoef-fler’s use of true north appears valid, it would make no difference in the outcome. According to Schoeffler magnetic north declination at this time at the place involved is approximately four degrees and thirty minutes. (Tr. 61) Employing magnetic north would shift the line approximately four degrees and thirty minutes to the right of the true north line shown on P-7. Schoeffler testified that using magnetic north, shifting the boundary at the required angle (4° 30'), would not relocate the line enough to move it 617.49 feet so as to include defendant’s lot.
Defendant also argues that Schoeffler admitted that different surveyors might select varying points as the middle of the intersection of the two roadways. He also admitted that there is some question as to whether the roads are in the centers of the two rights of way. Despite these admissions Schoeffler stated that variation as to location of the intersection point would not vary over twenty feet either way. Since any line drawn from different starting points in the intersection would run parallel to Schoeffler’s line (or the magnetic north line which Schoeffler indicated) the variation would be constant all along the line. It would not substantially affect the 617.49 foot distance between the north — south line and defendant’s property.
On behalf of Mrs. Grisaffe it is argued that the situation in this case should be governed by the rule applicable in conflicts between word descriptions of property in deeds and instruments of conveyance and attached maps. Defendant-appellant argues that in such cases the map controls. Then it is argued that the “official" Police Jury survey should control in a conflict between it and the “unofficial” survey made by Schoeffler. We do not follow this argument. The conflicts in deeds refer to differences between word descriptions and maps. Therefore, we interpret appellant’s argument as stated in her brief as being that the “official” Police Jury map should control over the word description contained in P-2. This contention evidently rests on the contention that this map and word description were adopted by the Police Jury at the same time. Also it apparently assumes that the word description was drafted to follow the map rather than the other way around. There is no evidence on this point. More important is the fact, as pointed out above, that the “official” Police Jury map is not in evidence. Since this is so, we have no conflict between a map and a word description.
The word description is in evidence, and Schoeffler’s survey and plat is the only determination of the north — south line in question contained in that description.
Mrs. Grisaffe further contends that the action of the trial court changed precinct boundaries after the opening of the qualification period for candidates and the date of the general election. Such changes may not be made as they are prohibited by LSA R.S. 18:532.1. Such an argument could have validity only if one accepted defendant’s premise that the boundary is as the registrar of voters contends it is, and also that, even if the Police Jury map was incorrect, it is official and legally binding until the Police Jury corrects it or a court of law orders it corrected in an appropriate action.
We regard the action with which this appeal is concerned as one to locate the district boundary and not an action to change it.
OTHER ARGUMENTS OF APPELLANT
Mrs. Grisaffe contends that La. Const. Art. 3 § 4(B) is applicable. Article 3, Section 4, Subsection B provides in pertinent part as follows:
“B. Domicile: Special Provisions. However, at the next regular election for members of the legislature following legislative reapportionment, an elector may qualify as a candidate from any district created in whole or in part, from a district existing prior to reapportionment if he was domiciled in that prior district for at least one year immediately preceding his qualification and was a resident of the state for the two years preceeding his *769 qualification period. The seat of any member who changes his domicile from the district he represents or, if elected after reapportionment, whose domicile is not within the district he represents at the time he is sworn into office, shall be vacated thereby, any declaration of retention of domicile to the contrary notwithstanding.”
She argues that this case is analogous to the above situation because Districts Eight and Nine were changed by a 1983 reapportionment required by the federal government. We disagree.
The case of Toldson v. Fair, 374 So.2d 759 (La.App. 2nd Cir.1979), writ denied, 375 So.2d 1182 (La.1979), cited as authority by Mrs. Grisaffe is distinguishable. In Told-son, the candidate had a residence in the new district, but failed to meet the one year domicile requirement. In the present case, the residency of Mrs. Grisaffe is at issue, not just the question of whether or not she meets the one year domiciliary requirement.
Mrs. Grisaffe contends that Mr. Nicholson is estopped from contesting her candidacy. She argues that since Mr. Nicholson knew of the alleged irregularity in the districting lines prior to the opening of the qualification period, he should not be estopped from raising the issue at a time when nothing can be done about it.
Equitable estoppel is defined as the effect of voluntary conduct of a party whereby he is barred from asserting rights against another party justifiably relying on such conduct and who has changed his position to his detriment as a result of such action. Babin v. Montegut Ins. Agency, Inc., 271 So.2d 642 (La.App. 1st Cir.1972). Estoppels are not favored in our law. They will be applied, however, when the evidence warrants it and when the ends of justice demand it. G.J. Deville Lumber Co., Inc. v. Chatelain, 308 So.2d 428 (La.App; 3rd Cir. 1975), writ denied, 313 So.2d 239 (La.1975).
The record reveals that the Registrar of Voters led Mrs. Grisaffe to believe she was a resident of District Eight. Mrs. Grisaffe did not rely on the conduct of Mr. Nicholson. We hold that equitable estoppel is not appropriate. Further, equitable considerations cannot be permitted to prevail when in conflict with positive written law. Chambers v. Parochial Emp. Retirement System, 398 So.2d 102 (La.App. 3rd Cir. 1981), writ denied 400 So.2d 1382 (La.1981). The positive written law of the Iberia Parish Home Charter, Section 2-01 requires that a candidate be a qualified voter, be legally domiciled, and actually reside in the district for which she seeks office.
We hold that the trial court correctly overruled defendant-appellant’s exceptions and correctly ruled in plaintiff’s favor declaring Patricia M. Grisaffe disqualified as a candidate for the office of councilwoman for District Eight of the Iberia Parish Council. The trial court’s judgment is affirmed and defendant-appellant is assessed with the costs of this appeal.
AFFIRMED.
*770 [[Image here]]