438 So.2d 550 (1983)
Lloyd A. NICHOLSON, Jr.
v.
Patricia M. GRISAFFE.
No. 83-C-1829.
Supreme Court of Louisiana.
August 31, 1983.
Concurring on Denial of Rehearing October 17, 1983.
*551 Michael W. Campbell, Caffery, Oubre, Dugas & Campbell, New Iberia, for plaintiff-applicant.
Paul J. deMahy, St. Martinsville, for defendant-respondent.
LEMMON, Justice.
This is an election contest which challenged relator's candidacy for the office of Member, Iberia Parish Council, District 8. The trial court disqualified relator as a candidate, finding that she, at the time of qualification, had not "been legally domiciled" and had not "actually resided" in District 8 for the year immediately preceding the qualification period, as required by Article II, Section 2-01 of the Iberia Parish Charter.[1] The court of appeal affirmed. 436 So.2d 763. We granted certiorari to review these rulings, particularly to consider whether the court of appeal erred in interpreting La. Const. Art. III, § 4(A) and (B) (1974) and in holding that relator did not fall within the "election following reapportionment" exception contained in Section 4(B).[2] 436 So.2d 763 We now reverse, *552 concluding that a candidate for Iberia Parish Council, in the next regular election following legislative reapportionment of a district, may qualify in any new district created in whole or in part by the reapportionment of the old district, if the candidate had been domiciled in the old district for at least one year immediately preceding his qualification.
Relator had lived at 200 Bayou Bend in New Iberia since November, 1981. At the time that relator moved into this residence situated on Lot 4-A of Blue Haven Subdivision, the lot was located within the boundaries of Police Jury District 9 of Iberia Parish.[3]
The Iberia Parish Police Jury adopted a plan reapportioning the Parish into new districts, and the plan went into effect in July, 1982.[4] The plan adopted a new boundary line separating District 8 from District 9.[5] Coincidentally, the voters of Iberia Parish adopted a home rule charter which apparently abolished the police jury system of government and adopted a president-council form, with council members to be elected from the newly reapportioned districts.[6]
After reapportionment, relator voted in District 8 in a September, 1982 election, believing that her residence fell within the new boundaries of that district. On July 27, 1983, relator filed a notice of candidacy. The present action ensued, challenging her qualifications as to the requirements of domicile.
The record supports the conclusions of the lower courts that relator's place of residence was located over 600 feet outside of the eastern boundary line of the new District 8. Therefore, relator did not meet the qualifications required by the parish charter.
Relator contends, however, that the Constitution's domicile requirements for legislators, including the "election following reapportionment" exception, are made applicable to members of parish governing authorities by La.R.S. 33:1225, which provides in pertinent part:
"Members of the police juries shall possess the same qualifications at the time of their election as members of the house of representatives ...."
La.R.S. 33:1225 applies by its terms to police jurors. However, the pertinent provision of the statute dates back to the 1800's, when the legislative branch of government in every parish was operated under the police jury system.
The problem of legislative reapportionment affects the legislative branch of government at all levels, and Section 4(B) *553 expresses the people's concern over the problem. Without protection of the kind accorded by Section 4(B), a highly esteemed legislator (either state or parish) might be forced out of office by reapportionment or might be ineligible to run for reelection in the district in which he is serving, if reapportionment less than one year before an election places him outside the district and prevents any possibility of his meeting the one-year residency requirement in the newly created district.
The courts have also shown a concern for the problems of a victim of legislative reapportionment. In McCarter v. Broom, 377 So.2d 383 (La.App. 1st Cir.1979), the court applied Section 4(B) by analogy to an encumbent police juror in a reapportioned district who did not have time after reapportionment to meet the residency requirement for council members under a new charter that abolished the police jury system of government.[7]
There is even more reason in the present case to apply the Constitution's solution to the problems of legislative reapportionment. The Iberia Parish Charter, although essentially adopting the domicile requirements for legislators, is silent on the effect of reapportionment on an encumbent or another candidate for that office in the next election. Nevertheless, the charter does take express notice of the reapportionment problem of an encumbent during his term, and Section 2-01 D provides that a council member's office is vacated by a change of domicile outside the district, unless the domicile is changed by reapportionment. Thus, this particular charter expressly protects an encumbent council member from losing his office because of reapportionment, but contains no provision to protect the same member's ability to run for reelection in the same district if reapportionment prevents him from meeting the residency requirements at the time of qualification. Since the charter should not be interpreted to be totally inconsistent, a court doubtlessly would permit the council member to run for election in the new district by construing the charter's silence as yielding to the general provisions in the constitution for legislators at all levels. Likewise, we conclude in the present case that the Iberia Parish Charter, which plainly demonstrates an intention to prevent reapportionment from causing havoc, should not govern relator's situation by silence. Rather, the constitutional solution for state legislators should be applied by analogy to Iberia Parish legislators, as it is applied expressly to those parish legislators who are still called police jurors.
We hold that relator, because of reapportionment of former District 9, properly qualified as a candidate in District 8, which was created in part from former District 9.[8]
Accordingly, the judgments of the lower courts are reversed, and judgment is rendered dismissing respondent's suit.
DENNIS, J., concurs.
WATSON, J., concurs in the result, but has serious reservations about whether the record makes a sufficient showing for relief.
LEMMON, Justice, Concurring in the Denial of the Rehearing.
On application for rehearing, respondent Nicholson's excellent application asserts that the Iberia Parish Charter does in fact contain a provision dealing with the victims of reapportionment and is not silent on the issue. Section 2.01 of the Iberia Parish Charter (quoted in footnote 1) prevents reapportionment from leaving a candidate without any district in which he has resided for one year, but does not give the candidate affected by reapportionment the choice to run in any of the new districts *554 created from his old district, as La.Const. Art. III, § 4(B) gives to legislators.[1] The Charter provision, respondent argues, also prevents the undesirable situation (present in this case) of a candidate's running in a district in which the candidate does not reside.
Election contests must be filed, tried, decided, appealed, and adjudicated with finality in a brief period of time, so as to facilitate preparation of the ballots and voting machines in the time span between the end of the qualifying period and the beginning of absentee voting. Time restraints and special procedural laws control the litigation from beginning to end. One such special provision is that which prohibits applications for rehearing in any court. See R.S. 18:1409 F. That special law contains an exception, namely that a court on its own motion may correct a manifest error called to the court's attention. While the application for rehearing in this case raises a weighty point which might command our attention and reconsideration in normal proceedings, there is no manifest error in the opinion on original hearing which brings this case within the exception to the general prohibition against rehearing applications in election contests.
Although it is of little consolation to the litigant in this particular case, the argument in the rehearing application (which was not presented orally or in briefs to this court before the original opinion) may be presented again if this issue comes up in subsequent litigation.
NOTES
[1] The composition of the Parish Council and of Council Members are set out in Article II, Section 2-01, as follows:

"A. The legislative power of the Parish government shall be vested in a council consisting of fourteen (14) members elected for four (4) year terms from districts described in Appendix A, one from and by the qualified electors in each district.
"B. A council member shall have attained the age of eighteen (18) years and shall be a qualified elector of the district from which elected at the time of qualification.
"C. A council member shall have been legally domiciled and shall have actually resided for at least one (1) year immediately preceding the time established by law for qualifying for office in an area which, at the time of qualification, is within the district from which elected.
"D. A council member shall continue to be legally domiciled and to actually reside within the district from which elected during the term of office. Should the legal domicile and/or actual residence of a council member change from the district from which elected, unless changed by reapportionment, the office shall automatically become vacant, which vacancy shall be filled as set out hereinafter." (Emphasis supplied)
[2] La.Const. Art. III, § 4(A) and (B) provide:

"(A) Age; Residence; Domicile. An elector who at the time of qualification as a candidate has attained the age of eighteen years, resided in the state for the preceding two years, and been actually domiciled for the preceding year in the legislative district from which he seeks election is eligible for membership in the legislature.
"(B) Domicile; Special Provisions. However, at the next regular election for members of the legislature following legislative reapportionment, an elector may qualify as a candidate from any district created in whole or in part from a district existing prior to reapportionment if he was domiciled in that prior district for at least one year immediately preceding his qualification and was a resident of the state for the two years preceding his qualification. The seat of any member who changes his domicile from the district he represents or, if elected after reapportionment, whose domicile is not within the district he represents at the time he is sworn into office, shall be vacated thereby, any declaration of retention of domicile to the contrary notwithstanding."
[3] Relator changed her address on her registration records on December 4, 1981. The records indicate the new address (200 Bayou Bend) was then in District 9.
[4] This fact was established only by the testimony of the Registrar of Voters, who stated that "reapportionment took place last year around July".
[5] In argument before this court, respondent contended that relator failed to prove the pre-1982 boundaries of District 9 were changed by reapportionment. While there is no testimonial or documentary evidence precisely stating that the boundary was changed, there is evidence to support such a conclusion, such as the testimony of the Registrar of Voters that relator's registration records were changed from District 9 to District 8 after reapportionment.
[6] The entire charter is not in the record.
[7] Indeed, because of the appeal of the federal court's redistricting order and the necessity of approval by the United States Attorney General, the candidate barely had time after reapportionment to move into the new district before the qualifying period began.
[8] Relator's brief indicates she is aware that the office of a candidate elected after reapportionment is vacated by the candidate's not being domiciled within the district at the time of being sworn into office.
[1] This court did not perceive the full import of this provision on original hearing, and no such argument was made. In fairness to the attorneys, it should be pointed out that there were many issues at the trial and appellate levels in this case, some of which were not reached by either this court or the court of appeal. The time constraints of an election contest frequently inhibit complete presentation of the evidence, as well as research and analysis of the many issues presented in this type of litigation.