BECKER, Judge.
In May of 1985 the plaintiff sold a 1985 BMW 7451 to Errol J. Ware of New Orleans for $29,500.00. The terms of the sale called for a $13,000.00 cash down payment, with the balance of $16,500.00 to be financed by Crescent City Bank and Trust and secured by a collateral pledge of a certificate of deposit in that amount belonging to the plaintiff/seller. Additionally the buyer Ware deposited $2,686.61 in cash with the bank to cover the cost of registration and recordation of the vehicle. In August of 1986 when the Ware loan was three months in the arrears the bank declared the loan in default and immediately cashed the plaintiff’s pledged certificate of deposit, using part of the proceeds to pay the balance due on the loan. The bank sent the balance of the certificate of deposit funds to the plaintiff/seller without an explanation. The bank then sent the canceled note marked “paid” to the buyer, Ware.
The plaintiff, Bosworth, instituted suit against the bank and Walter M. Dabbs, a loan officer for prematurely calling the Ware loan, seizing the Certificate of Deposit, failing to cure any default of Ware by applying to the loan the unused registration funds, and other acts of negligence. Originally the bank’s president, Bass, was included in the suit but subsequently was dismissed by the plaintiff.
The defendant bank and Dabbs filed answers and thereafter filed a motion for summary judgment. The District Court granted the defendants’ motion and dismissed the plaintiffs’ suit by a judgment dated March 3, 1988. The plaintiff thereafter filed this devolutive appeal.
The plaintiff contends that many genuine issues of material fact exist concerning the *270 circumstances of the bank’s handling of the Ware loan which would preclude the granting of the motion for summary judgment.
He asserts that the bank should be es-topped from defaulting the Ware loan because its pattern and history of accepting late payments constituted a modification of the loan.
Equitable estoppel is defined as the effect of voluntary conduct of a party whereby he is barred from asserting rights against another party justifiably relying on such conduct and who has changed his position to his detriment as a result of such action. Nicholson v. Grisaffe, 436 So.2d 763, (La.App. 3rd Cir. 1983); writ granted; 437 So.2d 286 (La.1983), reversed on other grounds 438 So.2d 550 (La.1983).
Because equitable estoppel bars the normal assertion of rights, each element must be proven. These elements are: (1) a representation by conduct or work, (2) justifiable reliance thereon; and (3) a change in position to one’s detriment because of the reliance. Watson v. Haik, 393 So.2d 173 (La.App. 1st Cir.1980).
Equitable estoppels are not favored in Louisiana and are invoked sparingly because they bar the normal assertion of rights. Commercial Bank and Trust Company v. Canale, 450 So.2d 761 (La. App. 5th Cir.1984), writ denied; 456 So.2d 166.
In Burase v. Gay, 324 So.2d 11, (La.App. 2nd Cir.1976), writs refused Feb 13, 1976, the defendants contended that the plaintiff by waiver and estoppel had lost his right to accelerate the amount due by reason of his repeated acceptance of late payments. The court held that mere acquiescence or forbearance does not create estoppel particularly when, as in the instant case, the obli-gee periodically complained or attempted to complain to the obligor about the payments being late.
At the time of the default, the record indicates that Mr. Ware was three months in arrears in his payments to the bank. The record and the depositions of the various bank officials show that Mr. Ware was contacted on numerous occasions about his delinquencies yet he still failed to make them current. Accordingly, we cannot find that the acceptance of late payments created an estoppel which would bar the actions taken by the bank.
The plaintiff further contends that whenever he inquired about the status of the loan, the bank always led him to believe that the loan payments were current, and that the bank never gave an accounting as to the delinquency and breakdown of how the funds from the pledge certificate of deposit were used.
Unfortunately for the plaintiff, in the signed pledge agreement he expressively waived his right to any demand for payment, appraisment, advertisement, protest, division, discussion, or notice of any kind. In Westenberger v. State Through Department of Education, 333 So.2d 264 (La.App. 1st Cir.1976), the court held that for a duty to speak or act to arise, so as to support estoppel by silence, the party es-topped must be shown to have had the opportunity to speak or act, must have had full knowledge of the facts of his right, and must have intended to mislead or at least have had a willingness that others should be deceived. The pleader of estoppel must be shown to have been ignorant of the truth and without convenient or ready means of learning the truth, and must have been misled into doing what he would not have done but for the silence of the party estopped.
In this case it cannot be said that the plaintiff did not have a convenient or ready means of learning the truth. All he had to do was to speak with Mr. Ware and inquire as to the timeliness of his payments. In addition, from the record and the deposition of the bank officer Dabbs, it appears there was no intent to mislead the plaintiff as to the status of the loan. Dabbs testified that he did not default the loan earlier even though Ware was always one month behind because Ware was at least attempting to make his payments. He further stated that once Ware fell three months behind, he then called the loan in *271 accordance with the established bank procedure.
While the bank does owe the plaintiff a breakdown of how the funds were used and when the certificate of deposit was cashed, there is no requirement to give a formal accounting to the plaintiff prior to exercising their rights to the certificate of deposit. The plaintiff waived his rights to any kind of notice or protest, therefore this contention is without merit.
The plaintiff complains that the bank had in its possession and custody at the time of the default, more than sufficient unused registration funds belonging to Ware which it could have applied to the loan to cure any deficiency.
The plaintiff appears to be claiming that right of discussion. Louisiana Code of Civil Procedure Article 5151 defines discussion as the right of a secondary obli-gor to compel the creditor to enforce the obligation against the property of the primary obligor, or if the obligation is a legal or judicial mortgage against other property affected thereby, before enforcing it against the property of the secondary obli-gor. The plaintiff, in the miscellaneous section of the collateral pledge agreement, expressly waived “all pleas of division and discussion” and further agreed that the bank could “release any parties from liability and/or any other collateral securing the loan and/or such other debts, without prejudicing any of your rights against my collateral pledge to you under this agreement.” Thus, the defendant bank did not have any obligation to use any other funds to cure the delinquency prior to proceeding against the plaintiffs collateral.
The plaintiff also contends that since the cancelled note was sent to Ware by mistake, his rights of subrogation to the rights of the bank were impeded because of the lack of possession of the note.
The fact that the bank allegedly forwarded the note marked paid to Ware does not affect the plaintiffs legal rights against Ware. The plaintiff is in effect a surety who after paying the debt of his principal is subrogated by mere operation of law to all rights of the creditor; no act of subrogation by the creditor in his favor is required. Serra e’ Hijo v. Hoffman, 1878, 30 La.Ann. 67, La.C.C. arts. 1829, 3047, 3048. In the case of White System of Alexandria v. Fitzhugh, 5 So.2d 555 (La.App. 2 Cir.1942) an intervening mortgagee was held subrogated to the rights of a second mortgagee despite the fact that the original promissory note evidencing the defendant’s debt was marked “cancelled” and returned to the original mortgagee rather than to the intervenor. The court noted:
“The appearance of the word cancelled on the back of each of the notes is of no moment. It was placed there by a rubber stamp without the knowledge or consent of intervenor and was ineffective against the latter ... Neither do we think that G.M.A.C.’s forwarding of the notes to Colfax Motor Company, Inc. instead of directly to the intervenor is of any great importance.”
The bank in the instant case mailed the note marked paid to the original maker of the note, Ware, because the loan had been satisfied with proceeds from the certificate of deposit. We fail to see how this fact would impede or interfere with the plaintiff’s right to recoup from Ware under his right of subrogation. Accordingly, we feel that this assignment of error is without merit.
The plaintiff asserts that the bank lost the original purchase and ownership papers causing great additional expense to the plaintiff in registering the vehicle for which the bank should be held liable in damages.
A review of the record and the evidence reveals that there are conflicting versions as to whether the bank or the plaintiff misplaced the original title papers to the automobile. Even if we assume that the bank misplaced the originals, that fact is immaterial to the suit because it would not affect the right of the bank to exercise its contractual rights under the loan and pledge agreements to declare the loan delinquent and seize the pledge certificate of deposits to satisfy the indebtedness without notice.
*272 In conclusion we find the judgment appealed from should be affirmed.
AFFIRMED.
BARRY, Judge, dissents with reasons.
The majority fails to recognize plaintiffs claims that
(1) the bank must give an accounting;
(2) the bank impeded the plaintiffs sub-rogation rights by wrongfully forwarding the cancelled promissory note and other documents' to the debtor rather than to the plaintiff; and
(3) the bank misplaced or mishandled the original title papers to the automobile. Each allegation is separate and presents
a genuine issue of material fact. Therefore, the defendants are not entitled to judgment as a matter of law. See La.C. C.P. Art. 966 B.
Summary judgment was improper.
I would reverse the district court judgment.