| ¿DOWNING, J.
John R. Norris challenges the candidacy of Martin W. Gould, Jr. for St. Tammany Parish Council Member, District 5, because he did not reside in the district from which he seeks election for more than one year prior to qualifying to run for office. The trial court sapiently analyzed the jurisprudence and legislation, reached the fair and reasonable conclusion that Gould was qualified, and dismissed Norris’s suit. Norris appeals.
Article II, Section 2-01 of the St. Tammany Parish home rule charter (the charter) states that a council member “shall have been legally domiciled and shall have actually resided for at least one (1) year immediately preceding the time established by law for qualifying for office in the area which, at the time of qualification, is within the district from which elected.”
Article II, Section 2-02 of the charter provides for reapportionment of the council election districts if the federal census *450 indicates a population shift. In 2001 the council re-apportioned the districts, and the United States Department of Justice pre-cleared the new districts in March 2003. The first election to be conducted under the new districting plan is set for October 4, 2003.
Gould lived within the boundaries of council district 5 for more than a year before the reapportionment. The redistricting placed his residence in district 7. In May 2003, after the Justice Department pre-clearance but less than one year before qualifying, Gould moved to an apartment located in the new district 5. Norris contends the trial court committed legal error in failing to disqualify Gould from running for office for district 5 council member because he did not reside within the boundaries of the present district for at least one year before qualifying.
|3In Nicholson v. Grisaffe, 438 So.2d 550 (La.1983), the Louisiana Supreme Court faced a similar situation. Grisaffe sought election to the Iberia Parish Council, a parish governing body established by a home rule charter. The council districts were reapportioned less than one year pri- or to the election, and the new boundaries created through redistricting excluded Gri-saffe’s residence from the district in which she sought to run. Consequently, she had not “actually resided” in the newly created district for one year prior to qualifying. The trial court and court of appeal both ruled that she was disqualified as a candidate, but the Louisiana Supreme Court reversed, applying the “election-following-reapportionment” exception of Article III, Section 4(B) of the Louisiana Constitution. The Court concluded that “a candidate for Iberia Parish Council, in the next regular election following legislative reapportionment of a district, may qualify in any new district created in whole or in part by the reapportionment of the old district, if the candidate had been domiciled in the old district for at least one year immediately preceding his qualification.” Nicholson, 438 So.2d at 552.
Article III, Section 4(B), of the Louisiana Constitution provides that “at the regular election for members of the legislature following legislative reapportionment, an elector may qualify as a candidate from any district created in whole or in part from a district existing prior to reapportionment if he was domiciled in that prior district for at least one year immediately preceding his qualification .... ” Louisiana Revised Statute 33:1225 provides, in pertinent part, that “[m]embers of the police juries shall possess the same qualifications at the time of their election as members of the house of representatives.” The Court in Nicholson noted that this provision dated back to the 1800s, when the legislative branch of government in every parish was operated under the police jury system. |4 It thus applied the exception to the residence requirements to parish council members, who take the place of police jurors in parishes with home rule charters.
Norris assigns as error the trial court’s finding that the election-following-reapportionment exception applies, on two grounds. First, he contends that because Gould moved from his home in old district 5 into his apartment in the new district 5 in May 2003, he had not been domiciled in the prior district “for at least one year immediately preceding his qualification” as provided for in Article III, Section 4(B). Norris argues that since Gould switched districts within the year, he was qualified for election as council member for neither his old district nor his new one.
We find this argument rather ironic considering Norris spent most of his time at trial attempting to show that Gould was still domiciled in his home in former district 5. Section 4(B) clearly contemplates *451 the office seeker moving from the old district to the new, as his seat shall be vacated if he is not residing in the district he represents when he is sworn into office. We find that his move into the proper district from the former district three months before qualifying did not disqualify him from availing himself of the election-following-reapportionment exception where he was domiciled in the former district for more than a year preceding the move.
Candidacy is favored in order to afford the electorate a choice. McCarter v. Broom, 377 So.2d 383, 384 (La.App. 1 Cir.1979). Laws governing the conduct of elections should be liberally interpreted to promote rather than defeat candidacy. Russell v. Goldsby, 00-2595, p. 4 (La.9/22/00), 780 So.2d 1048, 1051. Any doubt as to the qualifications of a candidate should be resolved in favor of |Rpermitting the candidate to run for public office. Dixon v. Hughes, 587 So.2d 679, 680 (La.1991).
In McCarter v. Broom, this court faced a factual situation similar to the one herein. The case involved parish council districts in St. Tammany Parish. The candidate moved his domicile after a federal court judgment ordered redistricting, which changed the district in which Broom lived. It was unclear at trial whether Broom accomplished the change before the close of qualifying. This court liberally interpreted the election qualifying statutes in light of the uncertainties resulting from the redistricting court order and the necessity of approval by the federal government. We found that “under the special circumstances resulting from Federal intervention in the State electoral process, a substantial injustice” would result if Broom were denied the opportunity to run in the district to which he had moved. McCarter, 377 So.2d at 384. Similarly, a substantial injustice would result to Gould if he were denied the opportunity to run in the new district 5.
Norris’s second ground for contesting the application of the election-following-reapportionment rule is that it violated fundamental principles of local government autonomy found in Article VI of the Louisiana Constitution. He argues Article III, Section 4(B) should not be applied because there is no gap in the St. Tammany Parish charter, as he contends Section 2-01 C’s residency and domicile requirements reflect “a deliberate policy determination by a home rule entity in an area in which the entity’s authority is exclusive.” He acknowledges that the Iberia Parish home rule charter in Nicholson contains the verbatim provision found in the St. Tammany Parish charter herein, and despite that provision the Louisiana Supreme Court found a gap existed. He argues, however, | fithat the day has come to revisit this issue. If the issue is to be revisited, we believe the Louisiana Supreme Court is the more appropriate forum.
Gould filed a motion asking this court to sanction Norris for filing what Gould contends was a frivolous lawsuit. Gould relies on Louisiana Code of Civil Procedure article 863 and Louisiana Revised Statute 18:1432 B. Both of these provisions refer to imposition of sanctions by the trial judge. Sanctions under article 863, relating to the signing of ill-founded pleadings, can be imposed only after a hearing in the trial court. Similarly, Revised Statute 18:1432 B requires a determination by the trial judge that an action objecting to candidacy was filed frivolously-
Only the trial court has the authority to impose sanctions for violation of the pleading certification requirements; the court of appeal’s authority is limited to *452 awarding damages solely for frivolous appeal. La. C.C.P. art. 2164; Hampton v. Greenfield, 618 So.2d 859 (La.1993); Cu-role v. Avondale Indus., 01-1808, p. 5 (La.App. 4 Cir. 10/17/01), 798 So.2d 319, 322. In Hampton, the Louisiana Supreme Court stated that only a trial court is capable of holding the required article 863 hearing where evidence may be presented on the sanctions issue. The Court explained this limitation:
[0]n its face, the ability to impose sanctions under art. 863 is limited to the trial court. Moreover, we believe that the authority to impose art. 863 sanctions is limited to the trial court. The court of appeal’s authority to regulate conduct before it is governed by La. Code Civ. P. art. 2164 .... By limiting the court of appeal’s authority to awarding damages solely for frivolous appeals, art. 2164 places a logical limit on the application of art. 863 to matters before the trial court.
Hampton, 618 So.2d at 862. We believe this same “logical limit” applies to Revised Statute 18:1432 B. Because Gould’s motion for sanctions under article 863 and Revised Statute 18:1432 B was filed for the first time with the appellate |7court, we must deny the motion.
For the foregoing reasons, we deny Gould’s motion for sanctions. We find the trial court was legally correct in dismissing Norris’s suit. We affirm the judgment of the trial court and cast Norris for all costs of this appeal.[1]
MOTION DENIED; AFFIRMED.

. Because of the result we reach, we need not address the exception raising the objections of no cause of action and no right of action that Gould re-urges in his appellate brief.