| | | |
|---|---|---|
| **ELISA KNOWLES COLLINS** | * | **NO. 2024-CA-0484** |
| **VERSUS** | * | **COURT OF APPEAL** |
| **LESLIE RICARD CHAMBERS, HON. MARCUS L. HUNTER,** | * | **FOURTH CIRCUIT** |
| **AND NANCY LANDRY IN HER CAPACITY AS THE** | * | **STATE OF LOUISIANA** |
| **SECRETARY OF STATE FOR THE STATE OF LOUISIANA** | * | |
| | * | |

**\* \* \* \* \* \* \***

**BELSOME, J., CONCURS IN PART AND DISSENTS IN PART.**

I agree with the majority regarding its holding as to Mr. Hunter, but I disagree with respect to Ms. Chambers and, for the reasons that follow, I would affirm the trial court's judgment in full.

***One-year domicile requirement.***

Ms. Chambers, lived in what had been District 5 for the Supreme Court under the district configuration before the amendment[1] of La. R.S. § 13:101.2 that became effective May 1, 2024. (For the sake of brevity, I will refer to the prior configuration as "Old District 5".) Her address, as of the time she qualified, was in Prairieville, which is not part of District 2 post re-apportionment. (Again for brevity, I will refer to District 2 as presently constituted as "New District 2".) The election for which Ms. Chambers qualified is for New District 2. A review of the redistricting statute shows that part of Old District 5 is now included in New District 2.

Ms. Collins alleges here that Chambers is not eligible because she does not live in New District 2. In the re-districting act, the legislature did not specify how the one-year residency eligibility rule would be handled. Because New District 2 did

_____

[1] The redistricting was enacted to settle a suit by the Justice Department under the Voting Rights Act.

1

not exist prior to the effective date of the amendment, it was not possible that any of the contenders for the seat to have lived in the district for more than a year as required by La. R. S. 18:451. In *Nicholson v. Grisaffe*, 438 So.2d 550 (La.1983) the court modified and extended a re-apportionment exception based on La. Const. art. III, § 4, which provides:

> B) Domicile; Special Provisions. However, at the next regular election for members of the legislature following legislative reapportionment, an elector may qualify as a candidate from any district created in whole or in part from a district existing prior to reapportionment if he was domiciled in that prior district for at least one year immediately preceding his qualification and was a resident of the state for the two years preceding his qualification. The seat of any member who changes his domicile from the district he represents or, if elected after reapportionment, whose domicile is not within the district he represents at the time he is sworn into office, shall be vacated thereby, any declaration of retention of domicile to the contrary notwithstanding.

Ms. Collins argues correctly that this exception specifically addresses "members of the legislature." It is noteworthy that in *Nicholson*, the court applied the exception to a parish council election. Ms. Collins attempts to distinguish *Nicholson* from this case on the basis of the office sought by the defendant in that litigation. Ms. Collins argues that that the parish council seat sought by the candidate in *Nicholson* was legislative in nature and is properly covered by La. Const. art. III §4 for that reason. I disagree with that argument.

The doctrine espoused in *Nicholson* is a pragmatic extension of a constitutional protection that is designed to ensure fairness in opportunity for candidates who might otherwise be "orphaned" by the re-apportionment of their historical district. The domicile exception in La. Const. art. III §4 specifically addresses itself to "members of the legislature", not members of any generic legislative body.

Nothing in *Nicholson* lends itself to a distinction that would restrict its application to the judiciary. If anything, *Nicholson* applies more forcefully here because the Supreme Court is much less a representative body than the legislature. The law that will be applied by whichever candidate is elected, will be based on

2

legal concepts unfettered by allegiance to any particular group of people or geographical interests. The *Nicholson* rationale was followed to permit a limited exception to the one-year domicile requirement in *McCarter v. Broom*, 377 So.2d 383 (La.App. 1st Cir.1979); and *Norris v. Gould*, 2003-1876 (La.App. 1 Cir. 9/5/03), 854 So.2d 448. It does not appear that there is any reported case in which the *Nicholson* exception is rejected.

Ms. Chambers has made a career for herself as an attorney in the New District 2. Under *Nicholson*, which has stood the test of time for over 40 years, she is entitled to run in that district with the understanding that if she succeeds, she must establish a domicile in New District 2 before she takes office.

### Tax filing certification.

These two candidates are both affected by the notice of candidacy provisions in slightly different ways. The majority factually distinguishes Ms. Chambers' case from Mr. Hunter's. I cannot find a logical distinction between the two cases. With regard to the filing of income tax returns, both candidates believed, in good faith, that he or she had complied with La. R. S. 18:451 by filing income tax returns as required. In Mr. Hunter's case, he received notice from his accountant that his taxes were filed electronically. In fact, that notification was incorrect. The accountant had transmitted the subject returns but they were not accepted by the Louisiana Department of Revenue ("LDR") for technical reasons.

Similarly, Ms. Chambers testified that she had filed her tax returns electronically for the years 2019 through 2023. Her testimony contains a thorough explanation of her filing process which lends credence to the certification on her notice of candidacy:

> My experience with the system has been to enter the information from my employers, the W- 2 forms, and any other relevant tax formation into Turbotax as—as they outlined in the various tabs. 2022 taxes were no different. Once I got to the end to submit my filing electronically which is how I always prefer, I submitted said tax

3

> information after being asked what was my preference to mail them or to submit them electronically. I selected to submit them electronically. Following that I received a prompt that recognized that I would be receiving a refund from the state. And I was asked how did I want to receive my refund to which I then entered by account information, my personal account information, and I requested that the refund be sent electronically.

No one has contested the proposition that TurboTax is a third party authorized to make electronic tax filings to LDR. Ms. Collins agreed that Ms. Chambers had made appropriate filings for every year except 2022. Ms. Chambers testified that she transmitted her 2022 return in June, 2024. As she testified, she used the same procedure for her 2022 return as she had used in her successful transmissions for the other years in question. At trial, Ms. Chambers introduced the return generated by TurboTax as well as a coversheet that she believed constituted a receipt for filing. It is worth mentioning that TurboTax calculated that Ms. Chambers was due a refund of nearly $4600 from LDR based on the information she supplied. Therefore, she believed it would have significantly inured to her benefit to make a sincere effort to file the return. [2] Her demonstrated consistency in filing procedure coupled with the natural human instinct to recover money owed make Ms. Chambers testimony more than mere self-serving testimony.

The majority cites *Clark v. Bridges*, 2023-0237 (La. 2/22/23), 356 So. 3d 990, the discussion of its affirmation of the trial court judgment regarding Mr. Hunter. However, I believe the majority errs in its interpretation of La. R. S. 18:451 and 18:492. The majority looks to *Clark* for guidance on what actions constitute "filing" of a tax return. I suggest here that La. R. S. 18:492 makes truthfulness in certification the guiding principle in this case. Requiring a candidate to meet *Clark's* definition of filing adds a requirement for candidacy that does not exist in the statute.

---

[2] We need not and should not guess whether Ms. Chambers testified truthfully and acted in good faith. This sort of determination falls squarely in the province of the trial court. Short of finding manifest error in that determination, this court should let that finding stand.

The principles and rationale by which the majority found Mr. Hunter's certification of tax filing to be acceptable must lead to the same conclusion regarding Ms. Chambers. I also hope to shed light on the fact that the legislation establishing the notice of candidacy and its related enforcement provisions (La. R. S. 18:451, et seq.) are procedural in nature. They create a process for qualification that is overlaid onto our constitution. In so doing, the certification provisions make a trap from a procedure that should be benign.

The qualifications for Supreme Court Judges are listed in our Constitution as follows:

> (A) A judge of the supreme court … shall have been domiciled in the respective district, circuit, or parish for one year preceding election and shall have been admitted to the practice of law in the state for at least the number of years specified as follows:
>
> > (1) For the supreme court or a court of appeals--ten years.
> ...
> (B) He shall not practice law. La. Const. art. V § 24

The enforcement provisions of La. R. S. 18:492(A)(7) allows a candidate to be dis-*qualified* even when he or she is in point of fact *qualified* as that word is defined by the Louisiana Constitution. The enforcement statute provides for disqualification of an otherwise qualified candidate if:

> The [candidate] *falsely* certified on his notice of candidacy that for each of the previous five tax years he has filed his federal and state income tax returns, has filed for an extension of time for filing either his federal or state income tax return or both as provided in R.S. 18:463(A)(2), or was not required to file either a federal or state income tax return or both. La. R. S. 18:492(A)(7). (Emphasis added.)

In effect, this legislation adds a *de facto* qualification that is not found in our constitution. If a candidate runs afoul of the notice of candidacy provisions, she can be eliminated from the race. This places the procedure of a formal announcement of candidacy above the substance of constitutional qualifications. When met with the same set of circumstances, the United States Supreme Court decided that compliance with the U. S. Constitution is the only qualification that

may be imposed on a candidate. See, e. g. *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 115 S. Ct. 1842, 131 L. Ed. 2d 881 (1995). While this edict does not bind us as a matter of state or federal constitutional law, the wisdom of the decision is evident in that it honors the primacy of the constitution over mere legislation.

We are not called upon, in this case, to rule on the constitutionality of La. R. S. 18:451, et seq.[3] I make these observations in order to provide perspective on the proper treatment of the notice of candidacy provisions. They should not be an end in and of themselves. When viewed in the light of the constitutional qualifications of a candidate for our Supreme Court, we should not be misdirected by legislation whose legitimate purpose is solely to provide a process by which a qualified candidate may give notice that she intends to offer herself for election. If that candidate has failed to file tax returns or owes money to the Board of Ethics, that should be fodder for the campaign trail in a democratic process.

That should hold even more weight here where two candidates were at risk of disqualification when they believed that they had complied with the very statutes that are now used in an effort to end their candidacy before it begins.

Even pretermitting the Constitutional primacy argument, these two candidates should not be eliminated as candidates based on the clearly understood wording of La. R. S. 18:492(A)(7). The statute allows for disqualification only when a candidate *falsely* certifies that she has filed tax returns.

The lower court found both of these defendant candidates were truthful in their testimony. Without the element of intent to deceive, a certification cannot be false by any common usage of the term "false". By eliminating the guilty knowledge requirement of the definition, the court would be adding yet another extra-

---

[3] In pleadings, Ms. Chambers alleged that the domicile requirement, as applied here, violated the Equal Protection of Law provisions of the United States Constitution. That issue was mooted in the analysis of the majority and it is not necessary to reach it in this dissent.

6

constitutional qualification for these candidates. If good faith compliance is inadequate to comply, the necessary result is that candidates may only stand for election if they have actually filed their tax returns rather than certifying truthfully that they filed them. This follows logically because when one mistakenly certifies that she has filed a return she is disqualified even though her certification was truthful but in error. To put a gloss on this statute that requires actual filing rather than good faith certification of filing is not true to the rules of statutory interpretation and defies the time-honored rule of law that strongly favors permitting candidacy rather than preventing it. *Russell v. Goldsby,* 2000-2595, 780 So.2d 1048 (La. 9/22/00).

For the reasons above, I would overrule the objection to Ms. Chambers' candidacy. To that extent only, I dissent from the majority.